**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 09 2012, 9:07 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SCOTT KNIERIM**
Danville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DANIEL FOSTER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 53A01-1105-CR-222 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Marc Kellams, Judge
Cause No. 53C02-1004-FA-362

**January 9, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Daniel Foster appeals the trial court's denial of his motion to correct error, which challenged his convictions for Class A felony attempted murder and three counts of Class C felony criminal recklessness. We affirm.

## Issue

Foster raises one issue, which we restate as whether the trial court properly denied his motion to correct error regarding affidavits from two witnesses, who claimed that they perjured themselves during their defense testimony.

## Facts

On April 12, 2010, Rebecca Baugh was pregnant with Foster's child. Baugh and Foster had been arguing over Foster's relationship with another woman. Foster's sister, Heather Foster, and his cousin, Wendy Campbell, were with Baugh and drove to Foster's residence. Campbell was driving the truck, Baugh was sitting in the middle, and Heather was sitting on the passenger side. As they approached the driveway to Foster's residence, Foster stepped from behind a tree, raised a gun, and shot at the truck. The bullet hit the windshield. Campbell decided to get out of the truck, but Baugh and Heather drove away and called the police. When the police arrived, Baugh had pieces of glass in her ear and on her clothing. Baugh and Heather told the police officers that Foster had shot at the truck. Campbell refused to speak with the officers. The officers were unable to locate the bullet, but a roofer working on a nearby house reported hearing a gunshot. During an interview with police a few days later, Baugh claimed that Foster did not shoot at the truck.

The State charged Foster with three counts of Class A felony attempted murder and three counts of Class C felony criminal recklessness. Foster and Baugh resumed their relationship and, during a bail hearing, Baugh testified that Foster did not shoot the truck. Heather and Campbell also testified at the bail hearing that Foster did not shoot the truck.

At Foster's jury trial, Baugh testified that she lied to the police officers during the second interview and that she lied at the bail hearing. Baugh testified that they decided to claim that a rock damaged the windshield. They fabricated estimates from two windshield repair businesses, including one from Thickstun Glass Company, and the fabricated estimates claimed that the rock was still embedded in the windshield at the time of the estimate. John Chester, a forensic scientist with the Indiana State Police Laboratory, testified that the hole in the windshield was caused by a high-velocity, low-mass impact and that microscopic traces of lead, which were consistent with a bullet, were found in the hole. Another expert, John Larsen, also testified that the windshield was damaged by a bullet. Heather and Campbell testified for Foster, claimed that a rock damaged the windshield, and claimed that they obtained estimates for repairing the windshield, which allegedly still had the rock stuck in it at the time of the estimates. On rebuttal, the State called Thomas Thickstun, the owner of a company that allegedly gave Foster an estimate to repair the windshield. Thickstun testified that his company did not produce Foster's estimate to repair the windshield.

The jury found Foster guilty of Class A felony attempted murder of Baugh and all three counts of Class C felony criminal recklessness. The jury found Foster not guilty of

the attempted murder of Heather and Campbell. After Foster's March 2011 sentencing, he filed a motion to correct error based on allegedly newly discovered evidence. Foster submitted affidavits from Heather and Campbell.[1] In her affidavit, Heather claimed that she lied in her testimony at the trial, that Foster did shoot at the truck but that Heather, Campbell, and Baugh were inside of the house at the time, and that she fabricated the windshield estimates. In her affidavit, Campbell claimed that Foster probably did shoot at the truck but that Heather, Campbell, and Baugh were inside of the house at the time and that she lied about a rock hitting the windshield. The trial court denied Foster's motion to correct error. Foster now appeals.

**Analysis**

Foster claims that the trial court improperly denied his motion to correct error regarding affidavits from Heather and Campbell, who claimed that they perjured themselves during their defense testimony. "The denial of a motion predicated on newly discovered evidence is a discretionary ruling and is reviewed deferentially." Godby v. State, 736 N.E.2d 252, 258 (Ind. 2000). We will reverse only for an abuse of discretion, which exists if the judgment goes against the logic and effect of the facts or the trial court has misinterpreted the law. Martinez v. State, 917 N.E.2d 1242, 1247 (Ind. Ct. App. 2009), trans. denied.

A recantation or admission of perjury does not necessarily mandate the grant of a new trial. Id. To obtain a new trial based on newly discovered evidence, a party must

---

[1] Foster also claimed that Baugh had admitted to perjuring herself at the trial. However, Foster presented no evidence to support this claim.

4

establish that: (1) the evidence was not available at trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result. Godby, 736 N.E.2d at 258. The moving party has the burden of showing that the newly discovered evidence meets all nine prerequisites for a new trial. Id. "We must analyze these nine factors with care, as 'the basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized.'" Martinez, 917 N.E.2d at 1247 (quoting Carter v. State, 738 N.E.2d 665, 671 (Ind. 2000)).

Although the basis for the trial court's decision does not appear in the record, we conclude that the trial court would have been within its discretion in deciding that the allegedly newly discovered evidence was not worthy of credit. See Webster v. State, 699 N.E.2d 266, 269 (Ind. 1998). Neither Heather nor Campbell is a disinterested witness here. Both Heather and Campbell have demonstrated their willingness to perjure themselves to protect Foster. Heather initially told police that Foster shot the windshield while they were in the vehicle, later testified that a rock damaged the windshield, and now claims that Foster did shoot the windshield but they were not in the vehicle at the time. Campbell testified that a rock damaged the windshield and now claims that Foster did shoot the windshield but they were not in the vehicle at the time.

When their story that a rock damaged the windshield was completely discredited at the trial, they came forward with this most recent story. However, Heather and

5

Campbell's most recent story does not correspond with the evidence that police officers responding to Heather and Baugh's call immediately after the shooting found glass in Baugh's ear and on her clothing. Further, Heather and Campbell's most recent explanation conflicts with the testimony of Foster and Heather's uncle, who testified that he was working on a car outside Foster's residence all afternoon and did not hear any gunshots.

This issue turns on credibility of witnesses. The trial court observed Heather and Campbell at trial, was presented with evidence at the trial of their possible perjury, and was presented with their affidavits in connection with the motion to correct error. The trial court would have been within its discretion to find the affidavits unworthy of credit. Because it was Foster's burden to establish all nine elements of the aforementioned test and he has failed to carry that burden, the trial court did not err by denying his motion for a new trial based on this evidence.

## Conclusion

The trial court properly denied Foster's motion to correct error. We affirm.

Affirmed.

KIRSCH, J., and BRADFORD, J., concur.